IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:14CR03 |
| vs. | |
| RUBEN JAMES BUCHANAN, | FINDINGS AND RECOMMENDATION |
| Defendant. | |

This matter is before the court on the motion to suppress filed by defendant Ruben James Buchanan (Buchanan) (Filing No. 11).  Buchanan is charged in the Indictment with knowingly causing D.L.L., a 14 year old Native American female, within the Winnebago Indian Reservation to engage in a sexual act by use of force, in violation of 18 U.S.C. §§ 1153 and 2241(a)(1).  **See** Filing No. 1 - Indictment.  Buchanan seeks to suppress all statements he made during an interrogation on September 7, 2013.  **See** Filing No. 11 - Motion.[1]

The court held an evidentiary hearing on Buchanan's motion on March 17, 2014.  Buchanan was present for the hearing along with his counsel, Federal Public Defender Shannon P. O'Connor.  The United States was represented by Assistant U.S. Attorney Douglas R. Semisch.  The court heard testimony from Federal Bureau of Investigation (FBI) Special Agent Jeff Howard (Special Agent Howard).  The court received into evidence an audio recording of Buchanan's September 7, 2013, interview (Ex. 1), Buchanan's September 7, 2013, interview transcript (Ex. 2), an Advice of Rights form (Ex. 3), a Presentence Investigation Report (Ex. 4), a *Miranda* Warning and Waiver (Ex. 5), and a Memorandum of Interview (Ex. 6).  A transcript (TR.) of the hearing was prepared and filed on March 20, 2014.  **See** Filing No. 21.  On March 21, 2014, Buchanan filed a post-hearing brief (Filing No. 23).

---

[1] Buchanan previously sought to suppress his statements as involuntary but has since abandoned such an argument.  **See** Filing No. 23 - Buchanan's Post-Hearing Brief p. 1 ("Ruben Buchanan signed a written waiver of his *Miranda* rights and provided an uncoerced statement . . . .  All remaining issues raised in the initial motion to suppress, including the issue of whether Mr. Buchanan made a knowing and intelligent waiver of his *Miranda* rights, are abandoned.").

## FINDINGS OF FACT

On September 7, 2013, Special Agent Howard interrogated Buchanan in the Woodbury County, Iowa, juvenile detention center interview room in Sioux City, Iowa (TR. 8:5-10). Buchanan, age sixteen, was under arrest for violating his supervised release (Ex. 2). Before the interrogation, Special Agent Howard advised Buchanan of Buchanan's *Miranda* rights and had him sign an Advice of Rights form (TR. 10:16-12:16; Ex. 2 p. 1; Ex. 3 - Advice of Rights form). After Buchanan signed the form, Special Agent Howard asked Buchanan if "[t]here was something that happened up on the hill by the towers at the end of July between you and a girl named [D.L.L.]. Can you tell me about that?" (Ex. 2 p. 2). Buchanan responded "I don't know if I remember it . . . [e]verybody [was] partying . . . . [and] I blacked out" (Ex. 2 p. 2). Buchanan stated he had been drinking vodka provided by his aunt (Ex. 2 p. 2-3, 6, 8). When asked for his aunt's name, Buchanan responded "I don't wanna say anything" (Ex. 2 p. 6). Special Agent Howard asked Buchanan if Buchanan remembered "having sex with [D.L.L.] and "raping [D.L.L.]" (Ex. 2 p. 3). Buchanan responded "No" to both questions (Ex. 2 p. 3). Special Agent Howard asked Buchanan what Buchanan wore the night in question and told Buchanan a witness saw Buchanan wearing black shorts and a red shirt the night in question (Ex. 2 p. 11). Buchanan agreed he wore some type of black pants and a red v-neck shirt (Ex. 2 p. 3-4, 10).

After additional questions regarding what Buchanan did the night in question, Buchanan stated he was drinking with friends after midnight near a friend's home and D.L.L. arrived (Ex. 2 p. 5-8). Buchanan stated everyone left or started to leave and as he stood up to leave, D.L.L. offered to help Buchanan as he may have been staggering (Ex. 2 p. 8-9). In estimation of Buchanan's level of intoxication, on a scale of one to ten with one being the lowest and ten being the highest, Buchanan said he had been an eight (Ex. 2 p. 3). Buchanan stated D.L.L. was probably a five on the same scale (Ex. 2 p. 9). When asked what happened after D.L.L. offered to help Buchanan, Buchanan responded "I don't know I don't even remember now" (Ex. 2 p. 10).

Special Agent Howard told Buchanan that D.L.L. said Buchanan "threw her down and raped her" (Ex. 2 p. 10). Buchanan responded "I don't remember throwing her down" (Ex. 2 p. 10). Special Agent Howard asked whether Buchanan remembered

2

kissing D.L.L. and giving D.L.L. hickies, Buchanan responded "No" (Ex. 2 p. 10). Special Agent Howard asked Buchanan if Buchanan told D.L.L. to "shut up or I'll beat you up" (Ex. 2 p. 11). Buchanan stated he did not remember telling D.L.L. anything (Ex. 2 p. 11). Special Agent Howard again asked for Buchanan's side of the story and Buchanan responded, "I don't know. I'm being pressured" (Ex. 2 p. 11). Approximately seventeen minutes into the interrogation, after Special Agent Howard Buchanan about Buchanan's relationship with D.L.L. (Ex. 2 p. 11-12), the following exchange occurred:

> Buchanan: Well I don't know what happened.
>
> Special Agent Howard: Which makes me believe that what she says is true. Rueben here's the thing just about every person I talk to says they can't remember. But then you leave everything in the other person's hands because if you say I was so drunk I don't remember then that means whatever they say must be the truth because you can't say otherwise. But if you want to tell me . . .
>
> Buchanan: I don't care about what happens I don't care what ever happens happens.
>
> Special Agent Howard: Well you're 16 and you're already going to jail I mean if you got something to say I'd say it now.
>
> Buchanan: I don't gotta say nothing.
>
> Special Agent Howard: You don't have anything to say?
>
> Buchanan: No.
>
> Special Agent Howard: What would you want to tell me about this thing?
>
> Buchanan: I don't want to talk about it.
>
> Special Agent Howard: Have you ever forced a girl to have sex against her will?

(Ex. 2 p. 12-13) (ellipsis in original interview transcript);[2] (Ex. 1 16:44 - 17:39).

Special Agent Howard continued asking Buchanan questions about Buchanan hiding from the police, Buchanan's relationship with D.L.L., and Buchanan's girlfriend (Ex. 2 p. 13-16). Additionally, Special Agent Howard asked Buchanan if there was any reason D.L.L. would make up a story about her having sex with Buchanan, to which Buchanan responded, "She probably wants to stay with Mason" (Ex. 2 p. 16).

---

[2] The ellipsis does not represent the exclusion of dialogue. After review of the audio recording, Special Agent Howard was finished speaking before Buchanan responded. **See** Ex. 1 16:44 - 17:15.

3

Buchanan said Mason had asked what happened between Buchanan and D.L.L. and Buchanan responded he did not know what Mason was talking about (Ex. 2 p. 16-17). Twenty-three minutes into the interrogation as Special Agent Howard attempted to gain more information, the following exchange occurred:

> Special Agent Howard: [Mason] doesn't sound very tough. Maybe you thought you'd be better than him or something I don't know. Maybe you thought she should be with you. Is that what happened? You wanted her to be with you?
>
> Buchanan: No. Fuck me. I don't know. I just don't wanna talk about it. I don't wanna…I just want…I don't know…
>
> Special Agent Howard: You just want what?
>
> Buchanan: I just want to get out get out of here.
>
> Special Agent Howard: Well I don't have the ability to let you out of here.
>
> Buchanan: No out of here, out of this room.
>
> Special Agent Howard: Oh out of this room?
>
> Buchanan: Yea.
>
> Special Agent Howard: Ok well if somebody was accusing you of something don't you think they should come and talk to you about it?
>
> Buchanan: Yea.

(Ex. 2 p. 17) (ellipses in original interview transcript);[3] (Ex. 1 23:14 - 24:00). Following this discussion, Buchanan continued to respond to Special Agent Howard's questions and generally stated he did not remember anything (Ex. 2 p. 17-24). Toward end of the interrogation, Buchanan said "Yeah I did this" in response to the question "Did you just make a mistake? Did you just have an urge? And you were just . . ." (Ex. 2 p. 23) (ellipsis in original interview transcript and no decipherable words in audio recording). Special Agent Howard clarified, "Are you saying that because you did?" and Buchanan said, "No I'm just doin this to get it over with" (Ex. 2 p. 23). Special Agent Howard terminated the interview when Buchanan stopped answering questions and "it didn't seem like we were getting anywhere, and he didn't have anything else he wanted to tell me" (TR. 24). The interview lasted 41 minutes and 19 seconds (Ex. 1).

---

[3] The ellipses apparently represent Buchanan's hesitation between words. **See** Ex. 1 23:14 - 23:30. There is no exclusion of decipherable dialogue. **See** *id.*

4

Special Agent Howard testified he understood Buchanan's statement "I don't want to talk about it" to be "a figure of speech and [that] [Buchanan] just didn't want to be there talking about this particular thing" and Special Agent Howard "wasn't clear on what exactly [Buchanan] didn't want to talk about" (TR. 19-20, 39 (**citing** Ex. 2 p. 13)). Special Agent Howard testified "this thing" in his question, "What would you want to tell me about this thing?" referenced the incident between Buchanan and D.L.L. (TR. 38). Special Agent Howard testified he understood "it" to refer to the sexual assault because he and Buchanan were speaking about the sexual assault (TR. 22, 37, 40-41). Special Agent Howard testified when Buchanan stated "I just want to get out get out of here" and "Not out of here, out of this room," Buchanan did not move to press the button to exit the interrogation room (TR. 20-21 (**citing** Ex. 2 p. 17)).

## LEGAL ANALYSIS

Buchanan argues he unequivocally and unambiguously invoked his right to remain silent at seventeen minutes into the interrogation and again at twenty-three minutes into the interrogation. **See** Filing No. 23 - Buchanan's Post-Hearing Brief.

A defendant must be advised of his constitutional right to remain silent prior to a custodial interrogation. **See *Miranda v. Arizona***, 384 U.S. 436 (1966). An invocation of the right to remain silent cannot be ambiguous or equivocal. ***Berghuis v. Thompkins***, 560 U.S. 370, 381-82 (2010). "A suspect invokes his right to remain silent by making 'a clear, consistent expression of a desire to remain silent.'" ***United States v. Ferrer-Montoya***, 483 F.3d 565, 569 (8th Cir. 2007) (**citing *United States v. Thompson***, 866 F.2d 268, 272 (8th Cir. 1989)). "Indirect, ambiguous, and equivocal statements or assertions of an intent to exercise the right to remain silent are not enough to invoke that right for the purposes of *Miranda*." *Ferrer-Montoya*, 483 F.3d at 569. A defendant must articulate a desire to remain silent "sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request" to exercise his right to remain silent and terminate the interrogation. ***Davis v. United States***, 512 U.S. 452, 459 (1994). "To determine whether a defendant has unequivocally invoked the right to remain silent, the defendant's statements are considered as a whole." ***Simmons v. Bowersox***, 235 F.3d 1124, 1131 (8th Cir. 2001)

(citation omitted). "[O]nce a person in custody has invoked his right to remain silent, admissibility of any subsequent statements depends on whether his "'right to cut off questioning' was 'scrupulously honored.'" **United States v. Sawyer**, 588 F.3d 548, 554 (8th Cir. 2009) (**quoting** ***Michigan v. Mosley***, 423 U.S. 96, 104-05 (1975)). Following a defendant's invocation of his right to remain silent, "the police must immediately cease questioning[.]" *Id.* at 554. Although not required, "it is often good police practice to attempt to clarify whether or not the suspect is actually invoking his rights." **United States v. Johnson**, 56 F.3d 947, 955 (8th Cir. 1995) (**citing** ***Davis v. United States***, 512 U.S. 452 (1994)).

Buchanan's three successive statements "I don't gotta say anything," "No" in response to "You don't have anything to say?", and "I don't want to talk about it" taken as a whole, indicated a clear, unequivocal, and unambiguous invocation of his right to remain silent. **See** Ex. 2 p. 13. Buchanan's use of the pronoun "it" was not ambiguous in the context of the interrogation. Special Agent Howard testified he understood "it" to reference the alleged sexual assault and incident between Buchanan and D.L.L. **See** TR. 22, 37-38, 40-41. If Special Agent Howard understood Buchanan's use of "it" to refer to the sexual assault then there was no ambiguity about Buchanan's invocation of his right to remain silent. There is no reason to disregard the face value of Buchanan's words and assume Buchanan used a "figure of speech" or "just didn't want to be there."

Buchanan's statement "I don't want to talk about it" was made in direct response to a general question about the alleged sexual assault rather than in response to a specific question about a minor fact. **See** ***Fare v. Michael C.***, 442 U.S. 707 (1979) (recognizing a defendant's refusal to answer certain questions is not the equivalent of a request to end the interrogation); **Owen v. Florida Dep't of Corr.**, 686 F.3d 1181, 1193 (11th Cir. 2012) cert. denied, 133 S. Ct. 2049 (2013) (holding a defendant's statement "I don't want to talk about it" in response to questions about specific, discrete details of a crime was not an equivocal invocation of the right to remain silent as when compared to stating "I don't want to talk about it" in response to general questions about the crime); **McGraw v. Holland**, 257 F.3d 513, 518-20 (6th Cir. 2001) (holding accused's repeated statements "I don't want to talk about it," which generally referred to the alleged crime were an unambiguous invocations of her right to remain silent). In fact, Buchanan's

6

interrogation exhibits examples of specific assertions and general assertions. When discussing the alcohol Buchanan and his friends consumed, Special Agent Howard asked for Buchanan's aunt's name. **See** Ex. 2 p. 6. Buchanan responded "I don't wanna say anything." **See** *id.* Buchanan's statement indicated his desire to not say anything about his aunt, presumably to avoid "get[ing] anybody in trouble by telling[.]" **See** *id.* A reasonable officer in this circumstance would understand "I don't wanna say anything" to mean Buchanan did not want to talk about the specific topic of who provided the alcohol, not the general topic of the alleged sexual assault.

In comparison, Buchanan's statement "I don't want to talk about it" was in response to a general question about the alleged sexual assault. The pronoun antecedent of "it" in "I don't want to talk about it" is Special Agent Howard's preceding question: "What would you want to tell me about this thing?" "[T]his thing," according to Special Agent Howard, meant the alleged sexual assault. **See** TR. 22, 37-38, 40-41. Special Agent Howard confirmed he understood "it" to refer to the alleged sexual assault. **See** *id.* Buchanan effectively said "I don't want to talk about [the alleged sexual assault]." Buchanan's assertion of his right to remain silent came in response to a general question about the alleged sexual assault. A reasonable officer in this circumstance would understand Buchanan did not want to talk about the sexual assault in general and thus invoked his right to remain silent.

Other federal courts have reached the same result when a defendant uses language similar to Buchanan's. **See** *United States v. Rambo*, 365 F.3d 906, 910 (10th Cir. 2004) ("In this case, [the detective] asked [the defendant] if he wanted to discuss the 'stuff,' i.e., the robberies, and [the defendant] said 'No.' There is no nuance nor context to vary the unequivocal meaning of [the defendant's] single word, monosyllabic response. His response, 'No,' could only mean an invocation of his right to remain silent."); *Hurd v. Terhune*, 619 F.3d 1080, 1089 (9th Cir. 2010) (finding defendant's responses to officers' requests to reenact a shooting, including "I don't want to do that," "No," "I can't," and "I don't want to act it out because that—it's not that clear," was an objectively unambiguous invocation of his right to remain silent); *Davis v. Greer*, 13 F.3d 1134, 1138 (7th Cir. 1994) (finding suspect's statement, "I don't want to talk no more" and "I don't want to talk about it any more," sufficient to invoke his right to

7

remain silent"); ***Christopher v. State of Fla.***, 824 F.2d 836, 840-41 (11th Cir. 1987) (finding defendant's statement "I got nothing else to say," considered in the totality of the circumstances, was an unambiguous invocation of his right to silence and therefore, officers violated his right to stop questioning by continuing the interrogation).

Although Buchanan did not use eloquent legal terminology to assert his right to remain silent there is "no ritualistic formula or talismanic phrase . . . essential in order to invoke the privilege against self-incrimination[.]" **See *Emspak v. United States***, 349 U.S. 190, 194 (1955).  Nevertheless, Buchanan did not merely evade answering questions or make an inquisitive statement, which would constitute an ambiguous assertion.  **See *United States v. Ferrer-Montoya***, 483 F.3d 565, 569-70 (8th Cir. 2007) (holding defendant's initial statement of "What else can I say?" was not a unequivocal expression of his desire to remain silent); ***United States v. Johnson***, 56 F.3d 947, 955 (8th Cir. 1995) (holding the defendant's statements "if I tell you anything, you're just going to use it against me later, aren't you?" and "I know I am going to jail for a long time, the rest of my life, I can't help myself by talking with you," did not invoke his right to remain silent, in part, because the defendant's statements were not made in response to any questioning about the crime but in response to questions to determine if the defendant wanted to waive his rights).  Instead, Buchanan invoked his right to remain silent sufficiently clearly so that a reasonable officer would have understood Buchanan to exercise his right to remain silent

After Buchanan invoked his right to remain silent, Special Agent Howard should have scrupulously honored Buchanan's invocation and ceased all questioning. However, Special Agent Howard completely disregarded Buchanan's invocation and continued the interrogation.  Special Agent Howard had the onus to cease questioning after Buchanan invoked his right to remain silent.  A sixteen year old juvenile who was feeling "pressured," even though he had previous experience with law enforcement, is not responsible for stopping the interrogation.  With how freely Special Agent Howard disregarded Buchanan's invocation and proceeded with the interrogation, it is unsurprising Buchanan continued responding to questions.  Regardless, Buchanan's invocation is not negated by the fact he responded to additional questions after Special Agent Howard failed to honor Buchanan's request to remain silent.  **See *Smith v.***

*Illinois*, 469 U.S. 91, 98 (1984) ("[A]n accused's *postrequest* responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself.") (emphasis in original).

Buchanan's statements made seventeen minutes into the interrogation, taken as a whole, evidence a clear and unambiguous invocation of his right to remain silent, notwithstanding the continuation of the interrogation. Special Agent Howard failed to scrupulously honor Buchanan's right to remain silent and, therefore, Buchanan's statements following his invocation of his right to remain silent should be suppressed. Additionally, although Buchanan's invocation preceded his statements at the twenty-three minute mark (Ex. 2 p. 17) Buchanan's later statements, taken as a whole, also indicated Buchanan's invocation of his right to remain silent. Buchanan's statements were unambiguous for the reasons discussed above. Accordingly,

**IT IS RECOMMENDED TO JUDGE JOSEPH F. BATAILLON**:

The defendant's Motion to Suppress (Filing No. 11) be granted to the extent the court should suppress all statements Buchanan made following invocation of his right to remain silent at seventeen minutes and thirty-five seconds into the interrogation.

**ADMONITION**

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

Dated this 11th day of April, 2014.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge